**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

STEPHEN BRAND, on behalf of himself
and all others similarly situated,                          CASE NO.:
                            Plaintiff,
v.


FORD MOTOR COMPANY,


                            Defendant.
_____/


## CLASS ACTION COMPLAINT

        Plaintiff, Stephen Brand, individually and on behalf of all others similarly situated, based

on personal knowledge, the investigation of counsel, and on information and belief, alleges the

following against Defendant, FORD MOTOR COMPANY, and states the following:

### NATURE OF THE ACTION

        1.      This is a class action challenging the deceptive and unfair conduct and marketing

by Defendant FORD MOTOR COMPANY ("Defendant" or "Ford") of its 2013 Ford Fusion

Hybrids and 2013 Ford C-Max Hybrids ("Vehicles").

        2.      With gas prices at an all-time high, Ford recognizes that fuel economy has

become the number one factor to consumers when choosing which vehicle to purchase or lease.

Armed with this knowledge, Ford has engaged in a uniform, widespread, deceptive and unfair

marketing campaign and course of conduct with claims that the Vehicles achieve 47 miles per

gallon across the board, including in the "city, highway and everywhere in between."  Contrary

to these representations, numerous independent tests have confirmed the Vehicles achieve

considerably less than 47 miles per gallon in normal highway and city driving conditions.

3.      Plaintiff is one of thousands of Illinois consumers who purchased a 2013 Ford Fusion Hybrid or 2013 Ford C-Max Hybrid, and who has not received the benefit of his bargain as a result of Defendant's deceptive and inaccurate gas mileage and fuel economy claims. Because of Defendant's deceptive representations regarding the gas mileage and fuel economy of the Vehicles, thousands of Illinois consumers have purchased or leased the Vehicles with gas mileage and fuel economy that was considerably less than expected.   Plaintiff and Class members have paid more for the Vehicles than they otherwise would have paid had Defendant's uniform, deceptive marketing campaign and other conduct contained accurate gas mileage and fuel economy rating information.

4.      Plaintiff brings this action on behalf of himself and a class of Illinois residents who purchased or leased a 2013 Ford Fusion Hybrid or a 2013 Ford C-Max Hybrid, for restitution, damages and equitable relief, including disgorgement, and appropriate attorney's fees and costs and any other relief the Court deems just and proper.

## PARTIES

### *Plaintiff Stephen Brand*

5.      Plaintiff, Stephen Brand ("Plaintiff"), resides in Cook County, Illinois.  Plaintiff purchased a C-Max Hybrid in January 2013 for approximately $30,000.

6.      Plaintiff first learned of the C-Max Hybrid through television advertisements that were part of Ford's marketing campaign.   After viewing the television advertisements and marketing campaign, Plaintiff viewed several internet advertisements for the C-Max Hybrid and also visited Ford's website to learn more about the C-Max Hybrid.  Prominently included within both the television and internet advertisements for the C-Max Hybrid was information indicating the C-Max Hybrid averaged 47 miles per gallon in highway, city and combined driving.   After viewing television and internet advertisements regarding the C-Max Hybrid, Plaintiff then went

to the Ford dealership and spoke with a salesperson who confirmed the C-Max Hybrid achieved 47 miles per gallon in real world highway, city and combined driving.

7.     When researching the C-Max Hybrid and viewing the representations in Ford's marketing campaign, Plaintiff was impressed with the high gas mileage that Ford represented the C-Max Hybrid would achieve and Plaintiff reasonably believed he would experience the same high gas mileage during normal, real-world highway and city driving. However, after purchasing the C-Max Hybrid, Plaintiff discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city.

8.     When Plaintiff purchased the C-Max Hybrid, he did not know of or have any reason to believe the advertised and marketed miles per gallon was inaccurate, or that his C-Max Hybrid would get considerably less mileage per gallon than the advertised 47 miles per gallon. Plaintiff reasonably believed that Ford would not deceptively market the C-Max's mileage per gallon. There was no adequate disclosure in any of Ford's advertisements and marketing campaign that Plaintiff viewed which indicated the advertised mileage per gallon was not reliable. Indeed, none of Ford's marketing efforts observed by Plaintiff were accompanied by any adequate disclosure, or clear or understandable disclaimer, that the advertised mileage per gallon would vary in relation to normal, real world driving conditions, that the advertised gas mileage would be considerably less in normal, real world driving conditions, or that the advertised gas mileage was based on EPA estimates.

9.     Plaintiff has only achieved an average of 30 mpg. Had the gas mileage and fuel economy for Plaintiff's C-Max Hybrid been accurately disclosed in Ford's marketing campaign, Plaintiff would not have purchased his C-Max Hybrid or would have paid less for the Vehicle.

10.     Ford's deceptive and unfair conduct relating to the fuel economy and gas mileage

of Plaintiff's C-Max Hybrid played a substantial factor in influencing Plaintiff's decision to purchase this vehicle. Plaintiff has been damaged and seeks relief on behalf of himself and the Class, including damages, rescission, restitution and injunctive relief.

### *Defendant Ford Motor Company*

11.     Defendant, Ford Motor Company, is a corporation duly organized under the laws of the state of Delaware, with its principal place of business in Dearborn, Michigan. Ford is one of the largest automobile manufacturers in the United States and is engaged in the manufacture, assembly, distribution, advertisement and sale of motor vehicles, including the 2013 Ford Fusion Hybrid and the 2013 Ford C-Max Hybrid, in the state of Illinois, and elsewhere throughout the United States. The 2013 Ford Fusion Hybrid and 2013 Ford C-Max Hybrid were released to the consumer market in or around September 2012.

## JURSIDICTION AND VENUE

12.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000 and is a class action in which members of the Class are citizens of a state different from Defendant.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District because Defendant:

a.      is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the distribution and sale of the Vehicles in this District;

b.      does substantial business in this District; and

c.      is subject to personal jurisdiction in this District.

4

## FACTUAL ALLEGATIONS

### The Importance Of Fuel Efficient Vehicles

14.     With a significant number of options to consider when choosing which vehicle to purchase, fuel economy stands out as an essential factor to consumers.  The Department of Energy and the Environmental Protection Agency have indicated four main reasons why fuel economy is important to consumers, including that it saves money, reduces climate change, reduces oil dependence and increases energy sustainability.  The significance of fuel economy to consumers is made further evident from estimates published by the Department Of Energy and the Environmental Protection Agency, which indicate a 10-mile-per-gallon difference (the difference between a 45 mpg vehicle and a 35 mpg vehicle) can equate to approximately $1,800 in additional fuel costs over a five year period, or an approximate $360.00 per year.  According to EPA estimates, a car that provides 35 miles per gallon will produce 1.1 million more tons of carbon dioxide per year than a car that provides 45 miles per gallon.

15.     Ford understands that with fuel costs rising to unprecedented levels, fuel mileage is the number one consideration for consumers when choosing to purchase a vehicle.  In fact, a study commissioned by Ford found that "[n]ew vehicle buyers across the industry rate good fuel economy as the No. 1 purchase reason."  As part of its efforts to increase revenue, Ford has made an aggressive move into the growing segment of hybrid vehicles.  In doing so, Ford has taken advantage of its knowledge regarding the importance of fuel economy and has lured consumers into purchasing the Vehicles with unfair  and deceptive  conduct, including  representations that lead consumers, including Plaintiff and the Class, to reasonably believe they would achieve the "47 city/47 highway/47 combined mpg" that Ford advertised.    Indeed, Ford sold more hybrids in the United States in the fourth quarter of 2012 than in any other quarter in its history, which momentum has continued into 2013.  However, in the process of promoting these hybrid

vehicles, Ford has engaged in a widespread, uniform, unfair and deceptive marketing campaign throughout the United States, including Illinois, regarding the real-world gas mileage of the Vehicles by promoting grossly inflated gas mileage numbers when the Vehicles fall substantially short of achieving the advertised "47 city/47 highway/47 combined mpg."

### Ford's Uniform, Unfair and Deceptive Marketing Campaign

16.     Ford uniformly markets that both the 2013 C-Max Hybrid and the 2013 Ford Fusion Hybrid deliver 47 miles per gallon for city, highway and combined driving. The 2013 Ford Fusion Hybrid and the 2013 Ford C-Max Hybrid both use a combination of a gas powered internal combustion engine and electric motors that allow the Vehicles to use less gas than a conventional, non-hybrid vehicle. Both Vehicles also utilize the same hybrid engine technology and the same powertrain, and both share the same 2.0L engine, electric motor and lithium-ion battery packs.

17.     The 2013 C-Max and Fusion Hybrids are crucial components of Ford's efforts to market itself as the country's leading fuel efficient auto-manufacturer. With the goal of becoming an industry leader in the hybrid market, Ford has spent considerable time and money promoting both of these Vehicles as achieving 47 mpg in city, highway and combined driving. As part of this effort, Ford has widely touted the Vehicles' alleged superior gas mileage estimates and fuel economy ratings in a uniform marketing campaign disseminated to Plaintiff and the Class through press releases, television advertisements, internet advertisements, print advertisements, brochures, billboards, gas pump screens, movie theater screens, and in the uniform sales pitch perpetuated by showroom sales people. This deceptive and unfair marketing plan was conceived and executed by Ford to convey inflated expected gas mileage information to Plaintiff and the Class throughout Illinois. These advertisements were deceptive as the Vehicles do not have the superior fuel efficiency conveyed in Defendant's advertisements and do not get

the advertised mileage in normal highway or city driving conditions.

18.     The main page of the Ford C-Max website, which Plaintiff viewed, promises "Hybrid efficiency" "Hybrid 47 / 47" and "Hybrid Technology – 47 mpg" and "MPG City/Hwy 47/47" without any mention of EPA estimates or any qualifying language.     When Plaintiff visited Ford's website, he did not view any federally mandated disclosures or any qualifying language in addition to the representation that the C-Max Hybrid would achieve 47 mpg in city, highway and combined driving.

19.     In addition, in an August 20, 2012 press release Ford indicated the C-Max Hybrid was the "first hybrid vehicle to offer 47 mpg across the board," with ""real car" range at 570 miles on one tank of gas" that "returns the same fuel economy whether driving cross-country or across the city..."   In a September 18, 2012 press release Ford similarly indicated the Fusion Hybrid was the "most fuel efficient mid-size sedan in America," which delivers "47 mpg city, 47 mpg highway, 47 mpg combined..."

20.     The statements that the Vehicles are able to achieve 47 mpg whether driving in the city, on the highway, or combined, in "real car" range are significant of the likelihood that these materials would deceive reasonable consumers into believing the advertised 47 mpg is actually achievable, particularly in light of the fact that there is no statement the actual mileage will vary.  In fact, Joe Bakaj, Ford's Vice President of Powertrain Engineering,  has promised the C-Max Hybrid can achieve 47 mpg in the "[c]ity, highway and everywhere in between."

21.     Ford has also made a dedicated effort to steer consumers away from the hybrid competition, namely Toyota.  Indeed, Ford has stated that it expected about half of C-Max purchasers to be "conquest customers," or purchasers who previously owned a vehicle from a competing manufacturer, such as Toyota, but who have switched to Ford.

22.     In a September 18, 2012 press release, Ford noted the "Fusion Hybrid tops the Toyota Camry Hybrid by 8 mpg highway and 4 mpg city, and delivers the highest-ever fuel economy numbers in city and highway driving for a midsize sedan."   Similarly, in an August 20, 2012 press release, Ford indicated the "[a]ll-new 2013 Ford C-MAX Hybrid delivers EPA-certified 47 mpg city, 47 mpg highway ratings – 7 mpg better than Toyota Prius v on the highway – for a 47 mpg combined rating C-MAX Hybrid to offer "real car" range at 570 miles on one tank of gas, taking customers from Los Angeles to Las Vegas and back on one tank, beating Toyota Prius V by 120 miles Ford's first hybrid to achieve equal city and highway ratings..."

23.     Ford's marketing efforts to lure consumers away from the competition have had the desired effect.  Ford's fourth quarter 2012 hybrid sales, when the Vehicles were released to the public, were more than 193% higher than its previous all-time high, raising Ford's market share by 9% from the previous year to a 16% market share in 2012, with total sales of 19,554 units.  Further, in December 2012, Ford sold a record 3,244 Fusion Hybrids, with over 70% of Fusion Hybrid sales resulting from "conquest sales."   In a December 2012 press release, Ford indicated the C-Max Hybrid was the "fastest Selling Hybrid Ever at Launch," with 8,030 vehicles sold in October and November and a conquest rate in the Ford lineup up 64%.   In addition, as indicated in a February 27, 2013 press release, Ford notes that "[p]reliminary Nielsen data from 2012 ad campaign indicate initial advertising efforts for Ford C-MAX hybrids have resonated well with consumers...Ford's new C-MAX hybrids are gaining momentum with new customers and are luring more Toyota hybrid owners out of their cars and into Ford's new hybrids."  Ford attributed the Vehicles' advertised fuel economy ratings of 47 mpg as the reason for the skyrocketing demand of the Vehicles.

24.     Contrary to Ford's representations that the Fusion Hybrid achieves 47 mpg in city, highway and combined driving, which Ford touts as eight (8) mpg greater on the highway than the Camry Hybrid, according to real world testing conducted by *Consumer Reports* discussed below, the Fusion Hybrid actually achieved two (2) mpg less in highway driving than the Camry Hybrid.

25.     Similarly, contrary to Ford's representations that the C-Max Hybrid achieves 47 mpg in city, highway and combined driving, which Ford touts as seven (7) mpg greater on the highway than the Prius V, according to real world testing conducted by *Consumer Reports* discussed below, the C-Max Hybrid actually achieved nine (9) mpg less than the Prius V in highway driving.

26.     According to *Consumer Reports*, while the advertised 47 mpg for the Ford Fusion and C-Max Hybrids was found to be significantly overstated compared to real world testing, the performance of the Toyota Camry Hybrid and the Prius V in real world conditions closely matched the mileage figures advertised by Toyota and reported to the EPA.

27.     The gas mileage and fuel economy expectations conveyed by Ford in its uniform, deceptive and unfair marketing campaign are material to consumers' choices about the vehicles they purchase.   Had it been disclosed to Plaintiff and the Class that Ford's marketing materials of the Vehicles' expected gas mileage and fuel economy under normal conditions was far inflated compared to the actual performance of the Vehicle purchased, Plaintiff and the class would have purchased a different Vehicle or paid less for the Vehicle.

28.     Because of Ford's widespread, uniform, deceptive and unfair marketing campaign and the claims made therein, Defendant has charged a premium price for the Vehicles.   The C-

max Hybrid starts at a list price of $25,200 and the Fusion Hybrid lists for $27,200, which is significantly more than the non-hybrid version of the Fusion which starts at $21,195.

29.     Ford's uniform, deceptive and unfair marketing materials disseminated to Plaintiff and the Class on television and the internet, in print and through its sales people, were part of a concerted marketing plan conceived and executed by Ford to convey inflated expected mpg information to Plaintiff and the Class.  These marketing materials were deceptive and unfair as the Vehicles do not achieve the advertised gas mileage in normal highway or city driving conditions.  Further the deceptive representations in these advertisements are assertions beyond the plain recital of EPA estimates.

30.     Ford has not made any attempt to remediate, retract, or modify its misrepresentations.

### The Vehicles Are Not Able to Achieve 47 MPG in Real World Driving Conditions

31.     Ford reported to the EPA that the Vehicles had achieved an EPA estimated 47 mpg in the city, 47 mpg on the highway, and 47 mpg combined.  The purpose of the EPA gas mileage estimate is to provide a consistent way for consumers to compare the fuel efficiency of different vehicles under identical test conditions.  However, the EPA estimates are not designed to determine, nor are they accurate predictors of the actual expected mileage for a vehicle under normal, real life driving conditions.  The reason is that the test conditions are created to maximize fuel mileage far beyond what a normal customer would experience.

32.     To begin, the EPA mileage tests are not conducted on roads, but rather are conducted in laboratories on machines known as dynamometers that do not provide the normal challenges to fuel mileage as would be experienced under real world driving conditions.  Further, the highway portion of the test averages only 48.3 mph and tops out at 60 mph. Obviously, an

average highway speed of 48.3 mph is not reflective of normal highway speeds which, in Illinois, average 65 per hour on rural interstates, and will result in inflated mpg versus normal highway driving conditions. In addition, the fuel used for these tests is a special fuel that is more efficient than fuel used by consumers in normal driving conditions. Also, the test lasts about 95 minutes with the car's air conditioning on for just 10 minutes of that time. Finally, the test is performed with only the driver, who is a professional driver whose job is to maximize the results of the test. The test does not account for quick starts or stops. Each of these issues results in a test mpg figure that is inflated over what can be expected in real world driving conditions and, as such, is improper to use for purposes of representing to customers what they can expect from the vehicle in real life driving conditions.

33.     In addition, the EPA relies on automakers to conduct their own tests, and self-report the results. The agency physically tests and audits only about 15% of the models on the market.

34.     As a result of the tremendous difference in driving conditions between the EPA testing and normal, real-world driving, the EPA mileage estimates are substantially inflated in comparison to the mileage attained by the same models driven in the real world. The discrepancy between EPA estimate mpg ratings and actual fuel economy achieved in the real world has been especially problematic for the 2013 Ford Fusion and C-Max Hybrids, which has been found inaccurate by *Consumer Reports* testing and by consumers who have purchased the Vehicles.

35.     On December 6, 2012, *Consumer Reports* announced the results of a report of the Ford Fusion Hybrid and C-Max Hybrid vehicles manufactured by Defendant. The *Consumer Reports* investigation into the Vehicles was initiated as a part of its service to the public to assess

problems for consumers purchase and use. According to *Consumer Reports*, the Vehicles' actual mileage ratings varied from the advertised ratings by as much as ten miles per gallon, depending on the particular model. The C-Max Hybrid was found to have a combined 37 mpg based on a 35 city mpg and 38 highway mpg, and the Fusion Hybrid was found to have a combined 39 mpg based on 35 city mpg and 41 highway mpg. According to *Consumer Reports*, more than 80 percent of the vehicles it tests for gas mileage are within 2 mpg of the EPA-estimated numbers supplied by manufacturers. The average consumer surely does not expect that an automobile manufacturer's representation that "mileage may vary" would allow a vehicle to perform at 37 mpg (or the average 30 mpg experienced by the Plaintiff) when the vehicle is advertised at 47mpg.

36.     Similarly, a test driver for the Los Angeles Times tested the C-Max Hybrid and found that the combined fuel economy was 37.5 mpg. In addition, a test driver for Fox News tested the Ford Fusion and reported that "[e]ven though I intentionally left my lead shoes at home and light-footed the Fusion Hybrid as much as possible (proving once and for all that I can, in fact, drive 55 mph) it took a lot of work to get it anywhere near 40 mpg, let alone the magic 47 mpg mark." Further, a senior editor at Motor Trend conducted testing of the C-Max Hybrid and found that it returned only 37 mpg. Indeed, even Raj Nair, Ford's group vice president of global product development, conceded "the way I drive" the C-Max falls short of the 47-mpg rating by 12 miles per gallon, or 25 percent.

37.     Despite reports from *Consumer Reports* and other independent testing mentioned above about Ford's inaccurate fuel economy ratings for the Vehicles, Ford continues to promote the fuel economy of the Vehicles as having the ability to achieve 47 mpg in the city, highway and combined real world driving. Notwithstanding this widespread advertising campaign,

consumers have not received what they were promised and have thus purchased vehicles that are less valuable and more expensive to drive than what Ford has represented. Consumers have therefore not received the benefit of their bargain.

## *CLASS ACTION ALLEGATIONS*

38.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil procedure.

39.     Class Definition –Plaintiff sues on behalf of himself and a Class defined as:

> **All Illinois residents who purchased or leased a 2013 Ford Fusion Hybrid or 2013 Ford C-Max Hybrid.**

40.     Excluded from the class is Defendant and its subsidiaries and affiliates, as well as Defendant's executives, board members, legal counsel, and their immediate families. Also excluded are all judicial officers and their staff assigned to hear any aspect of this case.

41.     Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or further limitation to particular issues.

42.     Numerosity – The proposed Class includes thousands of consumers throughout Illinois who purchased the 2013 Ford Fusion Hybrid or the 2013 Ford Fusion C-max Hybrid and is sufficiently numerous as Defendant sells and leases the C-Max Hybrid throughout the state of Illinois. The members of the Class are so numerous and dispersed throughout Illinois that joinder of all members is impracticable. The Class can be readily identified using sales records, production records, and other information kept by Defendant or third parties in the usual course of business and presently within their control.

43.     Common Questions of Law and Fact – Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. These questions include but are not limited to the following:

a.      Whether Defendant advertised, marketed, leased and sold the Vehicles using deceptive, unfair and overstated gas mileage estimates and fuel economy rating information;

b.      Whether Defendant knew or should have known that it advertised, marketed, leased and sold the Vehicles using deceptive gas mileage estimates and fuel economy rating information, and if so, when;

c.      Whether the Vehicles' actual, inferior gas mileage estimates and fuel economy ratings reduce the value of the vehicles;

d.      Whether Defendant's acts or practices made in connection with the advertising, marketing, promotion, lease and sale of the Vehicles were unfair and deceptive, in violation of the Illinois Consumer Fraud Act;

e.      Whether Defendant's deceptive misrepresentations, concealments and omissions were in violation of the Consumer Fraud and Deceptive Business Practices Act;

f.      Whether Ford's deceptive representations and omissions regarding the Vehicles gas mileage and fuel economy were reasonably likely to deceive Plaintiff and the Class in violation of the state consumer protection statutes alleged herein;

g.      Whether Plaintiff and members of the Class have suffered damages as a result of the conduct alleged herein, and if so, the proper measure of such damages;

h.      Whether Ford breached its express warranties to Plaintiff and Class Members;

i.      Whether Plaintiff and other members of the Class are entitled to injunctive and other equitable relief; and

j.      Whether Plaintiff and Class members are entitled to an award of their compensatory/actual damages.

44. Typicality – Plaintiff's claims are typical of the claims of Class members because Plaintiff's claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff, like all Class members, was exposed to Defendant's deceptive representations relating to his vehicle's gas mileage estimates and fuel economy rating information and suffered injury as a result thereof.

45. Adequacy – Plaintiff will fairly and adequately represent and protect the interests of the Class and is committed to the vigorous prosecution of this action. Plaintiff's interests are aligned with the Class and Plaintiff has no interests adverse to the class. Plaintiff has retained counsel who are competent and experienced in class-action litigation.

46. Manageability: There are no difficulties likely to be encountered in the management of this action as a class action that could not be managed by the Court: (a) the advantages of maintaining the action as a class action far outweigh the expense and waste of judicial effort that would result in thousands of separate adjudications of these issues for thousands of class members; and (b) class treatment further insures uniformity and consistency in results.

47. Superiority - A class action is superior to other available methods for the fair and efficient adjudication of the Class claims herein asserted in that:

a. Individual claims by Class members are impracticable as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake;

b. As a result, individual members of the Class have no interest in prosecuting and controlling separate actions;

c. It is desirable to concentrate litigation of the claims herein in this forum; and

d. The proposed class action is manageable.

## CAUSES OF ACTION

## COUNT I
### (Violation of Illinois Uniform Deceptive Trade Practices Act)

48.     Plaintiff and the Class re-allege and incorporate by reference the allegations contained in paragraphs 1 through 47 of this complaint, as though fully set forth herein.

49.     The Illinois Uniform Deceptive Trade Practices Act ("UDTPA") 815 Ill. Comp. Stat. 510/2 provides that:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: . . . (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding... (b) In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

50.     The purpose of UDTPA is to enjoin trade practices which confuse or deceive consumers. Pursuant to 815 ILCS 510/1, *et seq.,* a person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable.

51.     Ford is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

52.     The Ford Vehicles sold or leased to Plaintiff and Class Members were not of the particular characteristics, uses, benefits or qualities represented by Ford.

53.     Further, the Ford Vehicles sold or leased to Plaintiff and the other Class members were not of the particular standard, quality, and/or grade represented by Ford.

54.     As described herein, contrary to Ford's uniform, widespread, deceptive marketing campaign that the Vehicles are able to achieve 47 miles per gallon across the board, the Vehicles actually achieve considerably less than 47 miles per gallon in normal highway and city driving conditions.

55.     Ford's actions constitute deceptive, or unfair acts or practices because, as alleged herein, Ford advertised, marketed, leased and sold the Vehicles using inaccurate and overstated gas mileage and fuel economy information.

56.     Ford has further violated the UDTPA by engaging in the following conduct which created a likelihood of confusion or misunderstanding:

a.      Failing to provide adequate disclosures, or clear or understandable disclaimers, in any of its advertisements and marketing materials which indicated the advertised mileage per gallon was not reliable;

b.      Engaging in a uniform, widespread, deceptive marketing campaign indicating that the Vehicles have the ability to achieve 47 mpg whether driving in the city, on the highway, or combined,  in "real car" range, which deceived consumers into believing the advertised 47 mpg is actually achievable when it is not; and

c.      Steering Plaintiff and Class Members away from the hybrid competition, namely Toyota, by engaging in a uniform, widespread, deceptive marketing campaign promising that the Ford Fusion Hybrid and Ford C-Max Hybrid have better gas mileage and fuel economy capabilities than the Toyota Camry and Toyota Prius, respectively, when the Ford Vehicles actually have lower gas mileage and fuel economy capabilities than the Toyota hybrids.

57. Each of the aforementioned actions and failures to act constitute deceptive trade practices within the meaning of the UDTPA.

58. When Plaintiff purchased the C-Max Hybrid, he did not know of or have any reason to believe the advertised and marketed miles per gallon was inaccurate, or that his C-Max Hybrid would get considerably less mileage per gallon than the advertised 47 miles per gallon.

59. Ford has taken advantage of its knowledge regarding the importance of fuel economy and has lured consumers into purchasing the Vehicles with unfair and deceptive conduct, including representations that lead consumers, including Plaintiff and the Class, to reasonably believe they would achieve the "47 city/47 highway/47 combined mpg" that Ford advertised.

60. As a direct and proximate result of Defendants' willful violations of the Illinois Uniform Deceptive Trade Practices Act, Plaintiff and the Class have suffered damages.

61. Plaintiff and the Class are likely to be damaged in the future by Defendant's deceptive behavior. Plaintiff and the Class are current owners of the Vehicles which are not capable of achieving the gas mileage represented by Ford. Plaintiff and the Class have already paid, and will be required to pay in the future, fuel costs over what they would have paid had Defendant accurately disclosed the Vehicles' fuel economy.

62. Defendant has engaged in these deceptive practices intentionally and willfully, entitling Plaintiff to obtain costs and attorney fees under 815 ILCS 510/3.

## COUNT II
**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)**

63. Plaintiff and the Class re-allege and incorporate by reference the allegations contained in paragraphs 1 through 47 of this complaint, as though fully set forth herein.

64.     Plaintiff asserts this cause of action on behalf of himself and the Class.

65.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived, or damaged thereby." The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

66.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, *et seq.* prohibits unfair or deceptive acts or practices in the sale of such products as the 2013 Ford C-Max Hybrid and the 2013 Ford Fusion Hybrid.

67.     Plaintiff, Class Members and Defendant are "persons" within the meaning of 815 ILCS 505/1(c).

68.     Plaintiff and Class Members are "consumers" within the meaning of 815 ILCS 505/1(e).

69.     At all relevant times, Defendant conducted "trade and commerce" within the meaning of 815 ILCS 505/1(f).

70.     The Ford Vehicles at issue are "merchandise" as that term is defined in the Act, 815 Ill. Comp. Stat. 505/1(b).

71.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendants as set forth above concerning the 2013 Ford C-Max Hybrid and the 2013 Ford Fusion Hybrid which has caused damage and injury to Plaintiff and the Class.  Defendant's actions constitute deceptive, or unfair acts or practices because, as

alleged herein, Defendant advertised, marketed, leased and sold the Vehicles using inaccurate and overstated gas mileage estimates and fuel economy rating information.

72.     The gas mileage and fuel economy expectations conveyed by Ford in its uniform, deceptive and unfair marketing campaign are material to consumers' choices about the vehicles they purchase.   Had it been disclosed to Plaintiff and the Class that Ford's marketing materials of the Vehicles' expected gas mileage and fuel economy under normal conditions was far inflated compared to the actual performance of the Vehicle purchased, Plaintiff and the class would have purchased a different Vehicle or paid less for the Vehicle.

73.     In committing the acts alleged above, Defendant engaged in deceptive and unfair acts and practices acts by omitting, failing to disclose or adequately disclose, or concealing the material fact that it deceptively represented the gas mileage estimates and fuel economy rating information of the Vehicles.

74.     Ford intended for Plaintiff and the other Class members to rely on its aforementioned unfair and deceptive acts and practices, and such unfair and deceptive acts and practices occurred in the course of conduct involving trade or commerce.

75.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material to Plaintiff and Class Members' decision to purchase the Vehicles, and deceived Plaintiff and the Class.

76.     Ford's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the other Class members and, as such, warrants the imposition of punitive damages.

77.     Plaintiff and the other members of the Class paid a premium price for the Vehicles because they were deceived into believing that the Vehicles provided the purported mileage and fuel economy benefits that Defendant claimed.  Plaintiff and the Class have suffered ascertainable loss because they would not have purchased or leased, or would have paid less for, the Vehicles had Defendant's gas mileage estimate and fuel economy rating for the Vehicles accurately disclosed the Vehicles fuel economy.

78.     The resale value of the Vehicles purchased by Plaintiff and the Class have also been negatively impacted causing injury.  Furthermore, Plaintiff and the Class have already paid, and will be required to pay in the future, fuel costs over what they would have paid had Defendant accurately disclosed the Vehicles' fuel economy.

79.     Defendants' deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

80.     As a result of the foregoing wrongful conduct of Ford, Plaintiff and the other Class members have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, and reasonable costs and attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, et seq.

## COUNT III
### (Breach of Express Warranty)
### 815 ILCS 5/2-313

81.     Plaintiff and the Class re-allege and incorporate by reference the allegations contained in paragraphs 1 through 47 of this complaint, as though fully set forth herein.

82.     The Vehicles were accompanied by an express warranty when placed in the stream of commerce by Ford.

83.     Ford expressly warranted that the Vehicles would achieve 47 mpg in the city, highway and combined, across the board, and said warranty was the basis of the bargain between Plaintiff and Class Members and Ford.

84.     Ford breached its express warranty by placing the Vehicles into the stream of commerce that failed to achieve the 47 mpg in the city, highway and combined, across the board, in real world conditions, and the products thus did not perform as warranted.

85.     Ford further breached the warranty by knowingly selling or leasing to Plaintiff and Class Members Vehicles that did not perform as warranted as the Vehicles are not able to achieve the represented 47 mpg in the city, highway and combined, across the board, in real world conditions.

86.     Ford had actual knowledge that it was in breach of its express warranty at the time it placed the Vehicles into the stream of commerce.  The filing of this Complaint by Plaintiff and the Class, and other similar complaints, has provided Ford with reasonable notice.  Ford has nevertheless failed to amend the express warranties for the Ford Vehicles, or to change the defects in the Vehicles which prevents them from achieving the represented mileage per gallon.

87.     Plaintiff and the other Class members have been damaged as a direct an proximate result of the breaches by Ford in that the Ford Vehicles purchased or leased by Plaintiff and the other Class members were and are worth far less than what Plaintiff and the other Class members paid to purchase, which was reasonably foreseeable to Ford.  Furthermore, Plaintiff and the Class have already paid, and will be required to pay in the future, fuel costs over what they would have paid had Defendant accurately disclosed the Vehicles' fuel economy.

88.     As a direct and proximate result of Ford's breach of the warranties, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT IV
### (Assumpsit)

89.     Plaintiff and the Class re-allege and incorporate by reference the allegations contained in paragraphs 1 through 47 of this complaint, as though fully set forth herein.

90.     Plaintiff and members of the Class have conferred a substantial benefit upon Defendant through the lease or purchase of the Vehicles.

91.     During the Class Period, Defendant has wrongfully collected and retained money paid by Plaintiff and Class Members to Defendant for the purchase and lease of the Vehicles, based on Defendant's deceptive and unfair conduct relating to the gas mileage and fuel economy ratings, as alleged herein.

92.     The payments were accepted and retained by Defendant under circumstances such that it would be inequitable for Defendant to retain the benefit without payment to Plaintiff and the members of the Class.  Defendant has enjoyed and continues to enjoy the benefit of the funds wrongfully retained from Plaintiff and the Class.

93.     As a result of Defendant's actions, Plaintiff and the respective Class have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

94.     Further, Plaintiff, individually and on behalf of the class, seeks restitution and disgorgement of profits realized by Defendant as a result of its unfair, unlawful and/or deceptive practices.

95.     Plaintiff and the class have suffered irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, demands judgment against Defendant as follows:

A.      That the Court enter an Order against Defendant awarding to Plaintiff and the Class their compensatory/actual damages;

B.      Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

C.      Awarding restitution and disgorgement of Defendant's enrichment, benefits, ill-gotten gains and profits realized by Defendant as a result of its unfair, unlawful, or deceptive practices;

D.      Certification of the class pursuant to Fed. R. Civ. P. 23, certifying Plaintiff as the representative of the Class, and designating its counsel, Morgan and Morgan, as counsel for the Class;

E.      Awarding Plaintiff and Class members damages and pre-judgment and post-judgment interest as a result of Defendant's wrongful conduct alleged herein; and

F.      Awarding such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated:   April 23, 2013

Respectfully submitted,


/s/Panagiotis V. Albanis
Panagiotis "Pete" V. Albanis
Illinois Bar No. 6277031
**Morgan & Morgan**
Complex Litigation Group

12800 University Drive
Suite 600
Fort Myers, FL 33907
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Email: palbanis@forthpeople.com

John A. Yanchunis
Florida Bar No. 324681
Rachel L. Soffin
Florida Bar No. 18054
Christopher S. Polaszek
Florida Bar No. 116866
**Morgan & Morgan**
Complex Litigation Group
One Tampa City Center
201 N. Franklin St., 7th Fl.
Tampa, FL 33602
Telephone: (813) 314-6484
Facsimile: (813) 222-2406
Email: jyanchunis@forthepeople.com
Email: rsoffin@forthepeople.com
Email: cpolaszek@forthepeople.com

Peter Safirstein
New York Bar No. 2044550
Elizabeth S. Metcalf
New York Bar No. 4644431
**Morgan & Morgan, P.C.**
28 West 44th Street, Suite 2001.
New York, NY 10036
Telephone: (212) 564-1637
Facsimile: (212) 564-1807
Email: psafirstein@forthepeople.com
Email: emetcalf@forthepeople.com